[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: DEFENDANT'S MOTION FOR CONTEMPT #122 AND DEFENDANT'S MOTION FOR CONTEMPT #123
The defendant under Motions coded 122 and 123 seeks to hold the plaintiff in contempt for violation of a court approved stipulation dated June 9, 1992.
Many of the facts that give rise to these two motions to contempt are not in dispute.
The marriage of the parties was dissolved by Memorandum of Decision dated December 20, 1991. That decision, in part, provided as follows:
 The plaintiff is awarded the vacant parking lot next to St. Regis as his sole property, and he shall execute a note and mortgage deed to the order of the defendant in the amount of $50,000 without interest, payable in five (5) equal annual installments, first such due on January 2, 1993.
On June 9, 1992, the parties entered into a stipulation coded 119 that was approved of by the court. That stipulation modified a number of the prior orders entered at the time of dissolution including the order regarding the vacant parking lot referred to above. The stipulation regarding the vacant parking lot provided as follows:
 The parties shall equally divide the net proceeds from the sale of the parking lot adjacent to the St. Regis Apartments on 330 East Main Street, Waterbury, Connecticut, if the plaintiff sells said lot prior to the plaintiff's payment to the defendant of the sum of fifty thousand dollars ($50,000.00), without interest, which sum represents the value of the defendant's interest in said premises. Upon payment by the plaintiff to the defendant of one-half of the net proceeds of sale, he shall be discharged from his obligation to pay to the defendant the $50,000 sum hereinabove referenced. CT Page 10473
The court finds the following additional facts. In 1997, the plaintiff intended to file for bankruptcy. In order to raise funds for attorney's fees he sold the vacant lot in question. In March, 1997, the plaintiff transferred "all my interest in that certain tract, piece or parcel of real property in Schedule A attached hereto and hereby made a part hereof". Schedule A describes the vacant parking lot referred to in the original Memorandum of Decision and in the stipulation entered into between the parties on June 9, 1992. The lot in question was appraised in March of 1997 at $25,000. The plaintiff believed that he only owned a one-half interest in the lot and therefore the sale price was set at $12,500. The court finds that the total fair market value of the lot in question as of March, 1997, was $25,000. The disbursement sheet dated March 25, 1997, lists the property as "East Main Street (1/2 Interest) Waterbury, Connecticut." From the $12,500 was deducted the following:
State Conveyance Taxes $ 62.50
Local Conveyance Taxes $ 13.75
Attorney Fees $ 500.00
Payoff of Back Real Estate Taxes:
Payable to GTKL Investments LP $4,934.97
Payable to City of Waterbury $1,248.46 _________ $6,759.68
Balance Due Sellers: $5,740.32
The plaintiff did not pay any part of the $5,740.32 net amount he received to the defendant until November 6, 2000. On that date he turned over to her $2,870.16 representing one-half of the proceeds that he received from the sale. The defendant accepted those funds while expressly reserving her right to argue for additional funds. The $2,870.16 payment by the plaintiff to the defendant is too little and too late.
The court finds that the stipulation of the parties of June 9, 1992, that provided in part as follows:
"The parties shall equally divide the net proceeds from the sale of the parking lot" CT Page 10474 did not give the plaintiff the right to reduce from the gross sale price the payoff of back real estate taxes for the purposes of paying to the defendant the one-half of the net proceeds the defendant was entitled to receive. 1The plaintiff did not have the right to reduce the defendant's net proceeds by the amount of back real estate taxes any more than he would have had the right to reduce her net proceeds by any mortgage he may have placed on the property or any attachment that may have been placed on the property against him.
Section 46b-81 (a) gives the trial court power in a dissolution action to assign any part of the marital estate to either of the parties and authorizes the trial court to pass title to real property to either party or to a third party. The parties jointly owned the parking lot in question when the marriage was dissolved on December 20, 1991. The order of the trial court awarding the vacant parking lot to the plaintiff transferred the defendant's interest in that parking lot to the plaintiff. While the plaintiff believed in March of 1997 when he quit-claimed all of his interest in the parking lot to a third party that he only owned a one-half interest, the fact is that he was the sole owner of the parking lot. As of the date the plaintiff sold the parking lot, he had not made any payments to the defendant on the $50,000 order. The stipulation of June 9, 1992, required that the parties equally divide the net proceeds from the sale of the parking lot if the lot was sold prior to the plaintiff paying to the defendant the $50,000. The court finds that the stipulation required the sale of the parking lot by the plaintiff to be at fair market value which the court finds to be $25,000. From the $25,000 is to be deducted the State Conveyance Tax of $62.50, the Local Conveyance Tax of $13.75 and Attorneys Fees of $500 for a total deduction of $576.25. If the property had been sold at fair market value the net proceeds of the sale would have been $25,000 less $576.25 or $24,423.75. The defendant's one-half interest from the sale should have amounted to $12,211.87. The amount paid to her on November 6, 2000, was $2,870.16. That would leave a net balance due to the defendant of $9,341.71.
If the plaintiff had paid to the defendant one-half of the $5,740.32 net balance that he received at the time of closing on March 25, 1997, the court would not now find him in contempt of court. However, there is no justification for him having withheld $2,870.16 between March 25, 1997 and November 6, 2000. The court, therefore, finds that he is contempt of court and awards counsel fees for counsel to the defendant. From the evidence presented the court finds that a reasonable counsel fee for counsel for the defendant is $2,392.30.
As a result of the failure of the plaintiff to turn over to the defendant $2,870.16 or about March 25, 1997, the court is also awarding CT Page 10475 to the defendant interest on the amount due to her. As of the date of closing, on March 25, 1997, the amount that she should have received from the closing was $12,211.87. The court finds that interest from March 25, 1997, to November 6, 2000, at 8% for 2 1/2 years amounts to $2,440. The plaintiff paid to the defendant $2,870.16 on November 6, 2000, thereby reducing the unpaid interest due to the defendant to zero as of November 6, 2000. Further, the $12,211.87 is reduced as of November 6, 2000 by $430.16 ($2,870.16 less $2,440) resulting in a remaining balance due to the defendant as of November 6, 2000, of $11,781.71. Interest on the $11,781.71 from November 6, 2000, to date amounts to $720 for a total of $12,501.71. The attorney's fees allowed were $2,392.30 which when added to the $12,501.71 amounts to $14,894.01 due from the plaintiff to the defendant as of today's date. The court orders that interest continue to run at the rate of 8% per annum until paid. The court further orders that the full amount be paid within 30 days from the date this decision is filed.
The plaintiff also seeks to hold the defendant in contempt for failing to execute a quit-claim deed for her one-half interest in the lot in question. The court denies that claim for the following reasons: 1. The defendant was never ordered to execute a quit-claim deed for her one-half interest in the parking lot to the plaintiff; and 2. Her interest in the parking lot was transferred to the plaintiff by virtue of the court decision of December 21, 1991. The court, however, is aware of the fact that from the standpoint of clearing any title issues, that some parties would prefer to have the defendant's interest in the lot transferred by quit-claim deed rather than by court order. The court, therefore, orders that the defendant quit-claim her interest in the parking lot to the plaintiff simultaneously with the plaintiff paying to her the full amount due to her under this memorandum of decision. Counsel for the plaintiff is to prepare the quit-claim deed for the defendant to execute.
 ______________ AXELROD, JUDGE